(No. 2225—

JULIUS MENESTRINA, LEO MENESTRINA AND LEONA MENESTRINA, CHILDREN OF THEODORE J. MENESTRINA, DECEASED, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed June 3, 1937.*

WHEELER, OEHMKE & DUNHAM and WILMER L. VOGT, for claimants.

OTTO KERNER, Attorney General; GLENN A. TREVOR, Assistant Attorney General, for respondent.

MR. CHIEF JUSTICE HOLLERICH delivered the opinion of the court:

For more than five years prior to the 3d day of June, A. D. 1932, Dr. Theodore J. Menestrina was employed by the respondent in the Department of Agriculture, Division of Animal Industry, as a veterinarian, in making tuberculin tests of cattle at the St. Louis National Stock Yards, National City, Illinois. On the last mentioned date Dr. Menestrina, in the course of his duties, was attempting to make a tuberculin test of a bull at one of the pens in said stockyards, when the animal turned on him. In attempting to escape, the doctor climbed the fence on the south side of the pen. He had one leg over the cap board when the vertical board under the cap board gave way, and he fell into the adjoining pen, landing on his feet.

The next day he developed a cough which gradually became worse; thereafter he complained of a pain in his left side, and was troubled with a shortness of breath. His condition gradually became worse, although he continued to perform the duties of his employment until November 9th, 1932. Shortly thereafter he went to the Veterans' Hospital at Jefferson Barracks, Missouri, where he remained about three months. His condition continued to grow worse and he died on April 9th, 1933.

Julius Menestrina was appointed Administrator of the estate of said decedent and commenced an action in the City Court of East St. Louis against the National Stock Yards Co. The jury rendered a verdict in favor of the plaintiff for $2,000.00, on which judgment was entered. Such judgment was reversed by the Appellate Court on the ground that the evidence did not disclose any negligence on the part of the defendant.

Said Administrator filed his complaint in this court on August 8th, 1933, and subsequently filed an amendment thereto, whereby Julius Menestrina, Leo Menestrina and Leona Menestrina, children of said decedent, were substituted for said Administrator as parties plaintiff.

The Attorney General contends:

1. That Dr. Menestrina was not engaged in an employment which comes within the provisions of the Workmen's Compensation Act; that the employment in which he was engaged comes within the proviso of Paragraph 8 of Section 3 of the Workmen's Compensation Act, which provides as follows:

*"Provided,* nothing contained herein shall be construed to apply to any work, employment or operations done, had or conducted by farmers and others engaged in farming, tillage of the soil, or stock raising or to those who rent, demise or lease land for any such purposes, or to any one in their employ or to any work done on a farm or country place, no matter what kind of work or service is being done or rendered."

2. That claim for compensation was not made within the time required by Section 24 of the Workmen's Compensation Act.

3. That the death of Dr. Menestrina did not result from, nor was it accelerated by the injury.

We will consider such contentions in the order mentioned.

## I.

It has been stipulated that Dr. Menestrina in the performance of his duties as a State veterinarian ''was engaged in using scalpels, trochors, knives, scissors, hypodermic needles, razors, clippers, and other sharp-edged cutting tools, implements and surgical implements commonly used by a veterinarian.''

It has also been stipulated that the National Stock Yards is located entirely within the city limits of National City; that under the statutes of this State the National Stock Yards is a public stockyards and cattle received in such yards are considered in quarantine.

Under such stipulation and the other facts in the record, it therefore appears that claimant was under the Workmen's Compensation Act unless he came within the proviso of Paragraph 8 of Section 3 above quoted.

The evidence in the record shows that said Stock Yards Company is not engaged in farming or stock raising, but furnishes a place for receiving and disposing of livestock; and the work in which the decedent was engaged at the time of the accident in question, was not being done on a farm or country place. Although stock raisers may require their cattle to be tested by a veterinarian, yet the testing of cattle at a public stockyards, under the circumstances in evidence in this case, cannot be considered a part of the work of farming or stock raising.

## II.

It is admitted that the respondent had notice of the accident in question within the time required by Section 24 of

the Workmen's Compensation Act; also that Dr. Menestrina was paid his full salary from the date of the accident to the date of his death, to wit, April 9th, 1933. The complaint was filed herein on August 8th, 1933, and under the decision of our Supreme Court in the case of *United Air Lines* vs. *Ind. Com.*, 364 Ill. 346 (which decision was rendered subsequent to the filing of the brief of the Attorney General herein) the contention here made by the Attorney for the respondent is without merit.

## III.

The question as to whether the death of Dr. Menestrina resulted from the accident in question, presents the most serious question in the case. From the evidence in the record it appears that Dr. Menestrina returned to his headquarters immediately after the accident. His superior officer saw him about noon of the same day, and testified that Dr. Menestrina came into the office stooped over and holding the side of his chest with his right hand. That evening Mrs. Menestrina rubbed the left side of his chest with linament and such treatments were continued every other day for a long time. He developed a cough on the day after the accident, which became progressively worse, and which continued to the day of his death. He consulted Dr. R. E. Little of East St. Louis on June 22d, at which time he was coughing and complained of a pain in his left chest. The cough grew progressively worse and he complained of a shortness of breath. On October 25th, 1932 he again consulted Dr. Little who strapped the patient's chest with adhesive tape to prevent deep breathing and relieve him of the pain of which he complained on breathing or coughing.

He continued to perform his work at the stockyards until November 9th, 1932. On November 11th, 1932 he went to the Veterans Hospital at Jefferson Barracks, Missouri and remained there until February 4th, 1933. He then returned home on account of the sickness of his wife, who died shortly thereafter. He was examined by Dr. H. H. Hurd of East St. Louis on the 4th day of February, 1933. He then complained of shortness of breath and discomfort in his left chest, and remained under the care of Dr. Hurd until the time of his death on April 9th, 1933.

At the time of his first examination, Dr. Hurd found the left chest entirely filled with fluid, which indicated to him an inflammatory process of the lungs. The fluid was removed from the patient's chest on February 5th, 1933 and on three subsequent occasions between that date and the time of his death on April 9th, 1933.

Prior to the time of this accident Dr. Menestrina appeared to be active and healthy, had a dark ruddy complexion, and never remained home on account of sickness or disability during the five year period he was stationed at such stockyards.

After Dr. Menestrina's death, Dr. Hurd performed an autopsy, in the course of which he opened the abdominal cavity and examined all of the organs. He discovered a malignant growth involving the entire left lung; the chest was filled with fluid; there was a growth on the second rib in front on the left side, and one on the third rib in back on the left side; there was a metastaces covering the heart, stomach, spleen, both kidneys and the liver. In the opinion of Dr. Hurd there had been a previous fracture of two ribs which had not healed, although he could not state the date of such fracture.

Dr. Hurd injected some of the fluid which he removed from Dr. Menestrina's chest into the abdomen of a guinea pig, and the pig died in seventeen or eighteen days. The doctor opened the pig and found a malignant growth all over its abdomen.

Dr. Hurd concluded that the malignant growths which he found in the chest of Dr. Menestrina were cancer, and he testified that they could possibly have resulted from the injury, or the injury could have aggravated the growths if they were present prior to the injury.

Two experts testified on behalf of respondent. Neither of them treated Dr. Menestrina or were present at the autopsy. In answer to hypothetical questions, both doctors testified in effect that the accident in question could have had no bearing upon the death of the hypothetical person from cancer of the stomach.

From a careful consideration of all of the evidence in the record, and the inference which may reasonably be drawn therefrom, we are of the opinion that the death of Dr. Menestrina resulted from the accident in question.

It is admitted that respondent had notice of the accident within a short time thereafter, and that Dr. Menestrina was paid his full salary of $200.00 per month to March 1st, 1933, and $180.00 per month thereafter until the time of his death. The sum of $955.00 was paid to the doctor for his salary from the time he quit work on November 9th, 1932 until the time of his death on April 9th, 1933, and it has been stipulated and agreed that if an award is entered herein, said sum of $955.00 shall be deducted from the amount of such award.

Said decedent left him surviving Julius Menestrina, Leona Menestrina and Leo Menestrina, his children, who resided with him at the time of his death. It appears from the record that at the time of the injury to their father, said Julius Menestrina and Leona Menestrina were adults, and the said Leo Menestrina was a minor, aged 18 years. Consequently, Leo Menestrina was the only child whom the decedent was under legal obligation to support at the time of his injury.

From a consideration of the record before us, we therefore find as follows:

1. That Theodore J. Menestrina and the respondent, were, on June 3d, 1932, operating under the provisions of the Workmen's Compensation Act.

2. That on said date said Theodore J. Menestrina sustained accidental injuries which arose out of and in the course of his employment, and which resulted in his death on the 9th day of April, 1933.

3. That notice of the accident was given to respondent and claim for compensation made within the time required by the provisions of such Act.

4. That the earnings of the said Theodore J. Menestrina for the year preceding his death were Twenty-three Hundred Seventy-four Dollars ($2,374.00.)

5. That said Theodore J. Menestrina left him surviving his minor son, Leo Menestrina, whom he was under legal obligation to support, and who was then more than sixteen (16) years of age.

6. That the claimant, Leo Menestrina, is therefore entitled to have and recover from the respondent the sum of $4,000.00, less the sum of $955.00 which is to be deducted therefrom in accordance with the stipulation of the parties hereto as hereinbefore set forth.

7. That said award is payable in weekly installments of Fifteen Dollars ($15.00) per week; and that the entire amount of said award has accrued at this time.

Award is therefore entered in favor of the claimant, Leo Menestrina, for the sum of Three Thousand Forty-Five Dollars ($3,045.00.)

This award being for the death of a State employee, is subject to the provisions of an Act entitled ''An Act making an appropriation to pay compensation claims of State employees and providing for the method of payment thereof,'' approved July 2d, 1935 (Session Laws of 1935, p. 49.)

In accordance with the provisions of such Act, this award is subject to the approval of the Governor, and upon such approval, is payable from the appropriation from the General Revenue Fund in the manner provided in such Act.